**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**Case No. 6:21-cv-842**

DENNIS DELIA,

        Plaintiff,

v.

DITECH FINANCIAL LLC, NEWREZ LLC,
D/B/A SHELLPOINT MORTGAGE SERVICING,
AND BRADLEY ARANT BOULT CUMMINGS LLP,

        Defendants,

_____/

**<u>COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF</u>**

Plaintiff, DENNIS DELIA, an individual, files this Complaint for Damages and

Incidental Relief against Defendant(s), DITECH FINANCIAL LLC, NEWREZ LLC, and

BRADLEY ARANT BOULT CUMMINGS LLP, and alleges:

**I.**
**<u>PRELIMINARY STATEMENT</u>**

1.      This is an action brought for violations of 15 U.S.C. § 1692, *et seq.*, known more

commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), which prohibits debt

collectors from engaging in abusive, deceptive and unfair practices in connection with collecting

consumer debts and for pendent state law claims for violations of Florida Statute §559.55, *et*

*seq.*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA")

and for malicious prosecution.

**II.**
**JURISDICTION & VENUE**

2.      The jurisdiction of this Court arises under 15 U.S.C. § 1692k, 28 U.S. Code § 2201, 28 U.S.C. § 1331, and for pendant state law claims under 28 U.S.C. § 1367.

3.      DITECH FINANCIAL LLC (hereafter "DITECH") transacts business in the State of Florida.  The conduct complained of which gives rise to the causes of action occurred in Orange County, Florida.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts DITECH perpetrated therein upon DELIA.

4.      NEWREZ, LLC (hereafter "NEWREZ") transacts business in the State of Florida. The conduct complained of which gives rise to the causes of action occurred in Orange County, Florida.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts NEWREZ perpetrated therein upon DELIA.

5.  BRADLEY ARANT BOULT CUMMINGS LLP (hereafter "BRADLEY") transacts business in the State of Florida.   The conduct complained of which gives rise to the causes of action occurred in Orange County, Florida.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b)(2) and (c), as the claims arose from acts BRADLEY and its attorney agents perpetrated therein upon DELIA.

**III.**
**ALLEGATIONS AS TO PARTIES**

6.      At all times material hereto, DENNIS DELIA (hereafter "DELIA") was *sui juris* and a resident of Orlando, Orange County, Florida.

7.      At all times material hereto, DITECH is a State of Florida registered foreign limited liability company.  DITECH's principal place of business is located at 3000 Bayport Drive, Suite 880, Tampa, FL 33607.  DITECH was previously known as Green Tree Servicing, LLC.

8.      At all times material hereto, NEWREZ is a Foreign Limited Liability Company. NEWREZ does business as Shellpoint Mortgage Servicing.  NEWREZ's principal place of business is 1100 Virginia Drive, Suite 125, Fort Washington, PA 19034.

9.      At all times material hereto, BRADLEY is an Alabama law firm operating in at least six states and in the District of Columbia.  Bradley has a principal place of business located at 1819 Fifth Avenue N., Birmingham, AL 35203-2119.

10.      Defendants DITECH, NEWREZ and Defendant BRADLEY, collectively are referred to as "Defendants."

## IV.
## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.      DELIA has complied with all conditions precedent to the filing of this action or the conditions precedent have been waived or excused.

12.      DELIA owns and resides in a residence located at 2400 Chelsea Street, Orlando, Florida 32803 (herein "Subject Property").

13.      On June 10, 2005, DELIA executed a note payable to Lender, USAA Federal Savings Bank to refinance his personal family residence.  The note was secured by a mortgage on the Subject Property in favor of Mortgage Electronic Registration Systems (hereafter "MERS") as assignee for USAA Federal Savings Bank.  The debt allegedly went into default in

2006 when USAA Federal Savings Bank inexplicably reversed three months of mortgage payments made by DELIA, putting DELIA into a technical default, where he has remained since 2006. A litigation war has been raging since 2006 because USAA Federal Savings Bank did not return those funds to DELIA.

14.     Paragraph "(L)" of the mortgage states '"Escrow Items" means those items that are described in Section 3." Section 3 of the mortgage provides that escrow items are for taxes, assessments and other items which can attain priority over the mortgage, lease payments or ground rents on the Subject Property, insurance premiums, and mortgage insurance premiums. By definition, ***escrow does not include attorneys' fees***, collection costs, and costs associated with litigation.

15.     DELIA has had a lengthy history of litigation with DITECH. DITECH has a lengthy history of mislabeling attorneys' fees incurred in those prior cases and hiding those attorneys' fees in escrow and then billing DELIA for them. *GMAC Mortgage, LLC, v. DELIA*, 2006-CA-8644-O was the first foreclosure action on the Subject Property. In that action DITECH became the Plaintiff and DELIA lost at trial. DELIA appealed and won a reversal in *DELIA v. GMAC Mortgage Corporation*, 5D14-78 (5th DCA, 2014). DELIA subsequently won a retrial of the first foreclosure action. DITECH settled with DELIA and it agreed to pay DELIA's attorneys' fees in both cases. In *GMAC Mortgage, LLC, vs. DELIA*, 2009-CA-000405-O, DITECH erroneously filed a second foreclosure on the Subject Property and then later voluntarily dismissed it upon realizing that it had two pending foreclosures on the Subject Property at the same time. In *DELIA v. Green Tree Servicing, LLC*, 2014-SC-012808-O, DELIA sued DITECH for violation of the FDCPA because DITECH was attempting to collect the

attorneys' fees it had paid to DELIA in the first foreclosure action.  DITECH removed that action to federal court in *DELIA v. DITECH Financial, LLC*, 6:16-cv-01901 (M.D. Florida).  That case resolved after the district court rendered a favorable opinion for DELIA on DITECH's motion to dismiss.[1]  On August 5, 2019, DITECH filed a third action to foreclose the Subject Property in Orange County case number 2019-CA-009560-O.  This third foreclosure action is currently pending.

16.    Paragraph 19 of the mortgage provides DELIA with the right to cure a default and reinstate the mortgage loan. Paragraph 22 of the mortgage contract requires that Plaintiff provide DELIA with an accurate Notice of Default.[2]   Paragraph 20 of the mortgage contract provides that the Notice of Default is a condition precedent to the institution of any suit on the contract.

---

[1] In *DELIA v. DITECH Fin. LLC*, No. 616CV1901ORL31DCI, 2017 WL 2379819, at *4 (M.D. Fla. June 1, 2017), Judge Gregory A. Presnell stated:

> Finally, DELIA alleges that DITECH violated § 1692e(2) when it intentionally mislabeled attorneys' fees that he did not owe as corporate advance fees in its billing statements. Supporting his claim, DELIA alleges that the March 16, 2016, billing statement reported that he owed $22,517.82 in corporate advance fees. Only one month later, the corporate advance fees climbed to $97,532.82—an increase of $75,015.00. (Doc. 34 ¶¶ 88, 89.) Moreover, this increase occurred only two-and-a-half months after the February 23, 2016 agreement in which the parties settled the attorneys' fees and costs that DELIA incurred in the foreclosure action and appeal. Accordingly, DELIA alleges that DITECH increased its corporate advance fees in an attempt to recoup the amount paid to DELIA under the February 23, 2016 settlement agreement.2 Such an attempt by DITECH would certainly be a misrepresentation of the character, amount, or legal status of a debt. Therefore, Count II survives DITECH's motion.

[2] Throughout this complaint, the term "Notice of Default" is synonymous with "Breach Letter" and "Demand Letter".

17.     As a condition precedent to the institution of a third foreclosure action, on June 21, 2019, DITECH mailed to DELIA a Notice of Default that demanded DELIA pay $241,205.15 to cure the default (hereafter "Notice of Default"). (Exhibit "A")  The Notice of Default mislabeled attorney's fees as escrow, it grossly overstated the amount due to cure the default and it attempted to recoup those sums from DELIA.

18.     On August 5, 2019, DITECH filed the third foreclosure action on DELIA's home, with Count 1 sounding in foreclosure and Count 2 to reestablish a lost note. (Exhibit "B"). The foreclosure action is an attempt to collect a debt because the "Wherefore" clause in both counts requests the Court reserve jurisdiction to order a deficiency decree against DELIA.  The foreclosure complaint contains an exhibit "A", which is a lost note affidavit with a copy of the note and mortgage attached thereto.

19.     On November 8, 2019, DITECH's corporate representative, Janet Gioello, gave deposition testimony.  (Exhibit "C")   During this deposition, Ms. Gioello testified that the Notice of Default included attorneys' fees of $20,477.57 which were included in escrow. (Exhibit "C", page 18, ln. 14 - 19; page 24, ln. 7 – 14; page 25, ln. 5 – 9; page 26, ln. 4 – 6 and page 27, ln. 18; page 29, ln. 14 – page 41, ln. 1).

20.     DITECH does not own the loan.  Ms. Gioello testified that Fannie Mae owns the debt.  (Exhibit "C", p. 48, ln. 20 - 25).

21.     DELIA contends that DITECH does not even have authority to enforce the debt on behalf of Fannie Mae because there is no evidence that Fannie Mae owns the debt.  This is based on Ms. Gioello's testimony that the original promissory note is lost and because there is no documentary evidence of a complete chain of title passing from USAA Federal Savings Bank to

Fannie Mae.  Ms. Gioello acknowledged that there was a problem with the title to the debt and she testified that to "remedy a gap in the recorded ownership", on August 8, 2017, RESCAP Liquidating Trust, as successor in interest to GMAC Mortgage Corporation, and as nominee for USAA Federal Savings Bank, assigned the mortgage to MERS. (Exhibit "C", page 7, ln. 12 - page 10, ln. 6).   However, there are no assignments from MERS to Fannie Mae after August 8, 2017.

22.      In the third foreclosure action, on October 22, 2020, DITECH, by and through DITECH's counsel, Defendant Bradley, filed the affidavit of Justin L. Mitchell. (Exhibit "D"). Justin L. Mitchell is employed by Defendant NEWREZ which is the servicer for DITECH. (Exhibit "E", page 4, ln. 10 - 25).  In paragraphs 13 and 14 of the affidavit, Mr. Mitchell states that DITECH began servicing the loan on February 1, 2013.  At paragraphs 17 and 18 of Mr. Mitchell's affidavit, he stated that the Escrow Advance Balance consists entirely of taxes and insurance, the cure amount stated in the Notice of Default is comprised in part by an Escrow Advance Balance of $65,421.84, and that attorneys' fees are not included in the Escrow Advance Balance.

23.      On March 11, 2021, DELIA took the deposition of Justin L. Mitchell. Mr. Mitchell was represented by BRADLEY's employee, attorney Lauren Raines.  Mr. Mitchell testified that the Notice of Default sent to DELIA had erroneously double-billed DELIA $65,421.84 for escrow. (Exhibit "E", page 16, ln. 11 through page 18, ln. 1)  The following colloquy occurred:

Q.      But you would agree that in these total monthly payments due, escrow has already been computed into it, correct?

A.    That is correct.

Q.    So if escrow has already been computed into it, are you saying, then, that that $65,421.84 is double billing for escrow during the period of August 1, 2012, through June 1 of 2019?

A.    Yes, Sir. If you're - - if you're looking at it as these monthly payments here is a principal and interest payment with escrow included, and then there is an attempt to collect the 65421.84 number on top of these monthly payments, then you are correct in that that would be double billing, yes, sir.

Q.    So just for clarification, is Shellpoint - - is it Shellpoint's policy or procedure to double bill for escrow, sir.

A.    It is not a Shellpoint policy or procedure to double bill for escrow, sir.

Q.    Are you saying, then, that this additional $65,421.84 is an error?

A.    Yes, sir, that is - - that is correct.

(Exhibit "E", page 17, ln. 5 through page 18, ln. 1)

24.    Mr. Mitchell testified that some of the data represented in the WEB History Account is presented in the loan summary and in other documents, which data was reported in the Judgement Figures document identified as exhibit 10 to his deposition. (Exhibit "E", p. 43, ln. 19 - p. 44, ln. 14). Mr. Mitchell testified that he had added up all of the escrow advances listed for taxes and insurance and that he compared them to the escrow numbers in the "Demand Letter" and that he did not find any attorneys' fees included in the "Breach Letter". (Exhibit "E", p. 55, ln. 20 - p. 56, ln. 16) This is because the Notice of Default letter was based upon

summarized documents which were in turn based on other documents that had mislabeled

attorneys' fees as "insurance" instead of labeling them as attorneys' fees.

25.     Mr. Mitchell testified that exhibit 3 to his deposition, the payment history

document for DELIA's loan, included hazard insurance costs, escrow advances, corporate

advances, court costs and foreclosure attorneys' fees.  (Exhibit "E", p. 19, ln. 2 - p. 20, ln. 11).

He testified that the corporate advance history document, exhibit 4 to his deposition, did not

include escrow, but did include $27,181.50 in attorneys' fees.  (Exhibit "E", p. 20, ln. 15 - p. 21,

ln. 15).  He testified that the mortgage loan history document, exhibit 7 to his deposition, showed

that the escrow advance balance was $65,421.84, which was the same sum as that demanded in

exhibit 2 to his deposition, the Notice of Default.  (Exhibit "E", p. 26, ln. 14 - p. 27, ln. 18). He

testified that the loan history summary document, exhibit 9 to his deposition, was comprised of

information from other documents, including the payment history, and that appraisal

assessments, court costs, foreclosure costs and attorneys' fees are included therein.  (Exhibit "E",

p. 27, ln. 22 - p. 28, ln. 14; p. 29, ln. 18 - p. 30, ln. 6). He testified that the WEB History Account

of the DELIA loan, exhibit 8 to his deposition,, when compared to Exhibit 4 of his deposition,

mislabeled attorneys' fees as other charges.  When asked how that could happen, he replied "I —

I do not, sir.  I don't — it seems like a batch of them.  Like, you know, if you look at everything

else — just about everything else on this page, it seems like there were a lot of entries made by

Ditech that were listed as insurance with accounts payable, but I cannot attest to why that is, sir.

(Exhibit "E", p. 37, ln. 5 - 16).  Mr. Mitchell testified as to several of these instances of

mislabeled attorneys' fees, to wit:

(i)      A $125.00 expense transaction occurring on February 23, 2016 was mislabeled as "insurance" on the WEB History Account when in fact, it was an attorney fee on the corporate advance balance.  (Exhibit "E", p. 32, ln. 3 - p. 33, ln. 20; p. 34, ln. 13 - p. 35, ln. 9)

(ii)     Two $250.00 expense transaction charges occurring on April 5, 2016 and December 15, 2015 were mislabeled as "insurance" on the WEB History Account when in fact, those were attorneys' fees on the corporate advance balance. (Exhibit "E", p. 35, ln. 10 - p. 36, ln. 2)

(iii)    A $125.00 expense transaction occurring on November 27, 2015 was mislabeled as "insurance" on the WEB History Account when in fact, it was an attorney fee on the corporate advance balance.  (Exhibit "E", p. 36, ln. 15 - p. 37, ln. 7)

(iv)     A $1,500.00 expense transaction occurring on April 5, 2016 with a distribution date of November 27, 2015 was mislabeled as "insurance" when in fact, it was an attorney fee on the corporate advance balance.  (Exhibit "E", p. 37, ln. 17 - p. 13)

(v)      A $250.00 expense transaction occurring on April 5, 2016 with a distribution date of October 20, 2015 was mislabeled as "insurance" when in fact, it was an attorney fee on the corporate advance balance.  (Exhibit "E", p. 38, ln. 14 - p. 39, ln. 4)

(vi)     A $900.00 expense transaction with a distribution date of September 16, 2016 was mislabeled as "insurance" when in fact, it was an attorney fee on the corporate advance balance.  (Exhibit "E", p. 39, ln. 5 - p. 40, ln. 6)

(vii)     A $250.00 expense transaction with a distribution date of August 26, 2015

was mislabeled as "insurance" when in fact, it was an attorney fee on the

corporate advance balance.  (Exhibit "E", p. 40, ln. 7 - p. 40, ln. 14)

26.     During Mr. Mitchell's deposition, DELIA's counsel, James Orth, noted that there

are probably 30 more mislabeled attorneys' fees in the exhibits and that it wasn't necessary to go

through each of them.  In response, Mr. Mitchell stated that he would not be able to comment as

to why there was a discrepancy in the way the entries on the exhibits were characterized.

(Exhibit "E", p. 40, ln. 15 - p. 42, ln. 1)

27.     Mr. Mitchell testified that exhibit 10, DITECH'S Final Judgment Figures

document, was produced on January 16, 2020.  (Exhibit "E", p. 44, ln. 11 - 20). Mr. Mitchell

testified that each item displayed on DITECH's Judgment Figures document, was an amount of

money that SHELLPOINT (NEWREZ) was demanding DELIA pay, and in particular,

$359,255.11 for a total payoff, composed $198,194.20 in principal, $80,353.79 in interest,

$10,736.33 in "fees", which included attorneys' fees, $69,970.79 in escrow, $255.79 in late fees,

(Exhibit "E", p. 44, ln. 21 - p. 47, ln. 17)

28.     Mr. Mitchell testified that document 11 to his deposition, which is the affidavit

that he had executed and filed in the third foreclosure action (designated Exhibit "D" herein) was

in fact his affidavit and that there was nothing therein that he wanted to change.  (Exhibit "E", p.

47, ln. 18 - 2)

29.     DELIA's forensic accountant, Shannon Rubin, opined that the Notice of Default

letter overstated escrow by $70,856.91. (Exhibit "F").

30.     DELIA has been "the object of collection activity arising from consumer debt"

31.     DELIA is a "Consumer" pursuant to the FDCPA in that he is a natural person and was allegedly obligated to pay an obligation arising out of a transaction where the money, property, insurance or services, which are the subject of the transaction, was primarily for personal, family, or household purposes, to wit: a mortgage loan on a personal residence.

32.     The debt at issue under the FDCPA was primarily for personal, family, or household purposes.  The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

33.     The loan was in default prior to DITECH, NEWREZ and BRADLEY becoming involved with the collection of the debt.  Default occurred in 2006 and DITECH has claimed that it became the servicer of the debt in 2013.   The third foreclosure action is debt collection activity because it requests the Court reserve jurisdiction for a deficiency decree against DELIA.

34.     DITECH is a "debt collector" within the definition established by the FDCPA, § 1692a(6).  DITECH's primary business is the servicing and collection of debt on over 2.1 million residential mortgage loans totaling about  24 billion dollars in collection accounts.  The Notice of Default that DITECH mailed to DELIA states on the bottom of every page that it is a "DEMAND", and page 3 of that document specifies that DITECH is a debt collector attempting to collect a debt.  (Exhibit "A"). DITECH also regularly collects or attempts to collect debt owed or asserted to be owed or due to another. DITECH services millions of loans owned by others.  In the capacity as a loan servicer, DITECH attempts to collect the debt for the owner.   DITECH

uses instruments of interstate commerce, such as telephones, wires and the internet in its debt collection business.  DITECH also uses the US mails in its debt collection business.

35.       NEWREZ is a "debt collector" within the definition established by the FDCPA, § 1692a(6).  NEWREZ's  primary business is the servicing and collection of consumer debt from homeowner's nationwide, as America's 5th-largest non-bank mortgage servicer.  NEWREZ's web site boasts, "NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose".  See https://www.newrez.com/servicing-legal-disclosure/ NEWREZ last viewed on May 13, 2021. NEWREZ is a subservicer retained by DITECH as an agent of DITECH to help DITECH foreclose on DELIA's property.  NEWREZ also regularly collects or attempts to collect debt owed or asserted to be owed or due to another. NEWREZ services thousands of loans owned by others.  In the capacity as a loan servicer, NEWREZ attempts to collect the debt for the owner of the debt. In the capacity as a loan subservicer, NEWREZ attempts to collect the debt for the servicer of the debt.  NEWREZ uses instruments of interstate commerce, such as telephones, wires and the internet in its debt collection business.  NEWREZ also uses the US mails in its debt collection business.

36.       BRADLEY a "debt collector" within the definition established by the FDCPA, § 1692a(6).  BRADLEY is a law firm retained by NEWREZ to represent both NEWREZ and DITECH in prosecuting the third foreclosure against DELIA.  BRADLEY has ten offices in six states, plus an office in D.C. with nearly 550 lawyers.  BRADLEY maintains an office located in Tampa, Florida, housing 14 attorneys.  BRADLEY claims on its website that its Tampa office is a full-service law firm with a focus area in creditors' rights, among other stated areas.

BRADLEY's primary business is the collection of debt.  BRADLEY also regularly collects or attempts to collect debt owed or asserted to be owed or due to another.  BRADLEY uses instruments of interstate commerce, such as telephones, wires and the internet in its debt collection business.  BRADLEY also uses the US mails in its debt collection business.

37.    DITECH, NEWREZ and BRADLY have engaged in an act or omission prohibited by the or FDCPA.

## V.
## CAUSES OF ACTION

## COUNT I
## VIOLATION OF THE FAIR DEBT
## COLLECTION PRACTICES ACT (15 U.S.C. §1692d)

38.    DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through 37, above as if set forth here in full.

39.    This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

40.    DITECH had retained NEWREZ to act as DITECH's agent for purposes of collecting the debt from DELIA. NEWREZ had retained BRADLEY to act as its agent and as agent of DITECH for purposes of collecting the debt from DELIA.  BRADLEY employed attorney Lauren Raines to act as an attorney for DITECH and NEWREZ for purposes of collecting the debt from DELIA.  Lauren Raines was the attorney present at the deposition of Justin Mitchel.

41.     Mr. Mitchell had testified that the Final Judgment figures included a sum of $69,970.79 for escrow.  Mr. Mitchell had stated in his affidavit that the Escrow Advance Balance in the Notice of Default consisted entirely of taxes and insurance, that the cure amount stated in the Notice of Default is comprised in part by an Escrow Advance Balance of $65,421.84, and that attorneys' fees are not included in the Escrow Advance Balance.  This was a false statement presented by BRADLEY, NEWREZ and DITECH to DELIA.  When Mr. Mitchell was deposed he was asked if there was anything in that affidavit that he wanted to change and he stated "no". Mr. Mitchell had testified that the amount due in the Notice of Default derived from other documents which had mislabeled attorneys' fees as insurance, and that those " insurance" fees were then included in the escrow portion of the Notice of Default.  Mr. Mitchell had also admitted that DITECH's Notice of Default had erroneously double-billed DELIA $65,421.84 for escrow. During his deposition, Mr. Mitchell was represented by counsel for DITECH and NEWREZ, Lauren Rains.  Ms. Rains did nothing to correct Mr. Mitchell's obvious and blatant misrepresentation that there were no attorneys fees included in escrow, nor did she take any affirmative action to correct the $65,421.84 double billed escrow.

42.     DITECH has not produced any document to show that it owns the loan, nor has it produced any document to show that it is a servicer for the owner of the loan and authorized to collect the debt.

43.     The FDCPA provides in relevant part:

15 U.S.C. § 1692d:

A debt collector may not engage in any conduct the natural consequence of

which is to harass, oppress, or abuse any person in connection with the collection

of a debt.

44.    On June 1, 2017, Judge Gregory Presnell had warned DITECH that "Such an

attempt by DITECH would certainly be a misrepresentation of the character, amount, or legal

status of a debt." (See footnote 1, above.)

45.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692d on March 11,

2021, when at the deposition of Mr. Mitchell, he presented the January 16, 2020, Final Judgment

Figures and stated that the sums stated therein were demanded to be paid by DELIA.   Attorneys'

fees were included in escrow but were mislabeled as insurance.

46.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692d on October 22,

2020 and again on March 11, 2021, when at the deposition of Mr. Mitchell, he presented his

affidavit and made the false statement that no attorneys' fees were included in the escrow amount

due. Attorneys' fees were included in escrow but were mislabeled as insurance.

47.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692d on October 22,

2020 and again on March 11, 2021, when they attempted to collect the debt.  DITECH does not

own the debt and, if it did become the server of the loan, acquired that servicing right after the

loan was in default.

48.    The extensive litigation with DITECH over the past decade has caused DELIA to

endure continuous and increasing levels of pain and suffering, such that now he is suffering

extreme anxiety, mental and emotional distress, lack of sleep, restlessness and nausea.  DITECH

has continued to claim in the foreclosure actions that it owns the note when in fact, it does not

own the note, it has not prevailed in any of the actions to date, yet it attempts to recoup its attorneys' fees incurred in those prior actions by mislabeling them as escrow.  DITECH's agent, NEWREZ, and their attorney BRADLEY, have been acting in extreme bad faith towards DELIA as they were fully aware that DITECH had double billed DELIA $65,421.84 for escrow, but they didn't take any action to correct that error.  Plus, DITECH was not entitled to any attorneys' fees because it had not prevailed in any of the actions, yet they intentionally mislabeled attorneys fees as insurance and presented that to DELIA as a debt that he had to pay.   This is harassment, it is oppressive and abusive.

49.     As a direct and proximate result of the above-described conduct in violations of the FDCPA requirements, DELIA suffered damage including but not limited to loss of his ability to sell his home and use the proceeds of sale, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation, embarrassment, despair, and substantial attorneys' fees.

### *Prayer For Relief*

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendants, DITECH, NEWREZ and BRADLEY for:

A.     Actual damages;

B.     Statutory damages in the amount of $1,000.00;

C.     Reasonable costs and attorney fees; and

D.     Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

## COUNT II
## ACTION FOR VIOLATION OF THE FAIR DEBT
## COLLECTION PRACTICES ACT (15 U.S.C. §1692e(2))

50.     DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through

37, above as if set forth here in full.

51.     This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known

more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations

promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

52.     DITECH had retained NEWREZ to act as DITECH's agent for purposes of

collecting the debt from DELIA. NEWREZ had retained BRADLEY to act as its agent and as

agent of DITECH for purposes of collecting the debt from DELIA.  BRADLEY employed

attorney Lauren Raines to act as an attorney for DITECH and NEWREZ for purposes of

collecting the debt from DELIA.  Lauren Raines was the attorney present at the deposition of

Justin Mitchel.

53.     Mr. Mitchell had testified that the Final Judgment figures included a sum of

$69,970.79 for escrow.  Mr. Mitchell had stated in his affidavit that the Escrow Advance Balance

in the Notice of Default consisted entirely of taxes and insurance, that the cure amount stated in

the Notice of Default is comprised in part by an Escrow Advance Balance of $65,421.84, and

that attorneys' fees are not included in the Escrow Advance Balance.  This was a false statement

presented by BRADLEY, NEWREZ and DITECH to DELIA.  When Mr. Mitchell was deposed

he was asked if there was anything in that affidavit that he wanted to change and he stated "no".

Mr. Mitchell had testified that the amount due in the Notice of Default derived from other

documents which had mislabeled attorneys' fees as insurance, and that those " insurance" fees were then included in the escrow portion of the Notice of Default.

54.    The FDCPA provides in relevant part:

15 U.S.C. § 1692e provides in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

[…]

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

[…]

55.    On June 1, 2017, Judge Gregory Presnell had warned DITECH that "Such an attempt by DITECH would certainly be a misrepresentation of the character, amount, or legal status of a debt." (See footnote 1, above.)

56.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692e(2) on March 11, 2021, when at the deposition of Mr. Mitchell, he presented the January 16, 2020, Final Judgment Figures and stated that the sums stated therein were demanded to be paid by DELIA and that there were no attorneys' fees included in sum demanded for escrow.  Attorneys' fees were included in escrow but were mislabeled as insurance.

57.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692e(2) on October 22, 2020 and again on March 11, 2021, when at the deposition of Mr. Mitchell, he presented his affidavit and made the false statement that no attorneys' fees were included in the escrow amount due.  Attorneys' fees were included in escrow but were mislabeled as insurance.

58.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692e(2) on October 22, 2020 and again on March 11, 2021, when they attempted to collect the debt.  DITECH does not own the debt and it is not an authorized servicer of the loan with authority to collect the debt.

59.    As a direct and proximate result of the above-described conduct in violations of the FDCPA requirements, DELIA suffered damage including but not limited to loss of his ability to sell his home and use the proceeds of sale, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation, embarrassment, despair, and substantial attorneys' fees.

***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendants BRADLEY, NEWREZ and DITECH for:

A.    Actual damages;

B.    Statutory damages in the amount of $1,000.00;

C.    Reasonable costs and attorney fees; and

D.    Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

## COUNT III
## VIOLATION OF THE FAIR DEBT
## COLLECTION PRACTICES ACT (15 U.S.C. §1692e(10))

60.     DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through 37, above as if set forth here in full.

61.     This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

62.     DITECH had retained NEWREZ to act as DITECH's agent for purposes of collecting the debt from DELIA. NEWREZ had retained BRADLEY to act as its agent and as agent of DITECH for purposes of collecting the debt from DELIA.  BRADLEY employed attorney Lauren Raines to act as an attorney for DITECH and NEWREZ for purposes of collecting the debt from DELIA.  Lauren Raines was the attorney present at the deposition of Justin Mitchel.

63.     Mr. Mitchell had testified that the Final Judgment figures included a sum of $69,970.79 for escrow.  Mr. Mitchell had stated in his affidavit that the Escrow Advance Balance in the Notice of Default consisted entirely of taxes and insurance, that the cure amount stated in the Notice of Default is comprised in part by an Escrow Advance Balance of $65,421.84, and that attorneys' fees are not included in the Escrow Advance Balance.  This was a false statement presented by BRADLEY, NEWREZ and DITECH to DELIA.  When Mr. Mitchell was deposed he was asked if there was anything in that affidavit that he wanted to change and he stated "no".  Mr. Mitchell had testified that the amount due in the Notice of Default derived from other

documents which had mislabeled attorneys' fees as insurance, and that those " insurance" fees were then included in the escrow portion of the Notice of Default.  Mr. Mitchell had also admitted that DITECH's Notice of Default had erroneously double-billed DELIA $65,421.84 for escrow. During his deposition, Mr. Mitchell was represented by counsel for DITECH and NEWREZ, Lauren Rains.  Ms. Rains did nothing to correct Mr. Mitchell's obvious and blatant misrepresentation that there were no attorneys fees included in escrow, nor did she take any affirmative action to correct the $65,421.84 double billed escrow.

64.     The FDCPA provides in relevant part:

15 U.S.C. § 1692e provides in relevant part:

 A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

[…]

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[…]

65.     DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692e(10) on March 11, 2021, when at the deposition of Mr. Mitchell, he presented the January 16, 2020, Final Judgment Figures and stated that the sums stated therein were demanded to be paid by DELIA. Attorneys' fees were included in escrow but were mislabeled as insurance.  The mislabeling of attorneys' fees was intentional, as DITECH had been previously warned by Judge Gregory

Presnell on June 1, 2017, that "Such an attempt by DITECH would certainly be a misrepresentation of the character, amount, or legal status of a debt." (See footnote 1, above.)

66.    DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692e(10) on October 22, 2020 and again on March 11, 2021, when at the deposition of Mr. Mitchell, he presented his affidavit and made the false statement that no attorneys' fees were included in the escrow amount due. Attorneys' fees were included in escrow but were mislabeled as insurance.

67.    As a direct and proximate result of the above-described conduct in violations of the FDCPA requirements, DELIA suffered damage including but not limited to loss of his ability to sell his home and use the proceeds of sale, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation, embarrassment, despair, and substantial attorneys' fees.

### *Prayer For Relief*

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendants BRADLEY, NEWREZ and DITECH for:

A.    Actual damages;

B.    Statutory damages in the amount of $1,000.00;

C.    Reasonable costs and attorney fees; and

D.    Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

**COUNT IV**
**ACTION FOR VIOLATION OF THE FAIR DEBT**
**COLLECTION PRACTICES ACT (15 U.S.C. §1692f)**

68.     DELIA realleges and reaffirms the allegations contained in Paragraphs 1 through

37, above as if set forth here in full.

69.     This is an action for damages for violation of 15 U.S.C. § 1692, *et sequi*, known

more commonly as the "Fair Debt Collection Practices Act" (the "FDCPA") and the regulations

promulgated thereunder, brought herein pursuant to 15 U.S.C. § 1692k.

70.     DITECH had retained NEWREZ to act as DITECH's agent for purposes of

collecting the debt from DELIA. NEWREZ had retained BRADLEY to act as its agent and as

agent of DITECH for purposes of collecting the debt from DELIA.  BRADLEY employed

attorney Lauren Raines to act as an attorney for DITECH and NEWREZ for purposes of

collecting the debt from DELIA.  Lauren Raines was the attorney present at the deposition of

Justin Mitchel.

71.     Mr. Mitchell had testified that the Final Judgment figures included a sum of

$69,970.79 for escrow.  Mr. Mitchell had stated in his affidavit that the Escrow Advance Balance

in the Notice of Default consisted entirely of taxes and insurance, that the cure amount stated in

the Notice of Default is comprised in part by an Escrow Advance Balance of $65,421.84, and

that attorneys' fees are not included in the Escrow Advance Balance.  This was a false statement

presented by BRADLEY, NEWREZ and DITECH to DELIA.  When Mr. Mitchell was deposed

he was asked if there was anything in that affidavit that he wanted to change and he stated "no".

Mr. Mitchell had testified that the amount due in the Notice of Default derived from other

documents which had mislabeled attorneys' fees as insurance, and that those " insurance" fees were then included in the escrow portion of the Notice of Default.

72.     The FDCPA provides in relevant part:

15 U.S.C. § 1692f:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

73.     On June 1, 2017, Judge Gregory Presnell had warned DITECH that "Such an attempt by DITECH would certainly be a misrepresentation of the character, amount, or legal status of a debt." (See footnote 1, above.)

74.     DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692f on March 11, 2021, when at the deposition of Mr. Mitchell, he presented the January 16, 2020, Final Judgment Figures and stated that the sums stated therein were demanded to be paid by DELIA and that there were no attorneys' fees included in sum demanded for escrow.  Attorneys' fees were included in escrow but were mislabeled as insurance.

75.     DITECH, NEWREZ and BRADLEY violated 15 U.S.C. § 1692f on October 22, 2020 and again on March 11, 2021, when at the deposition of Mr. Mitchell, he presented his affidavit and made the false statement that no attorneys' fees were included in the escrow amount due.  Attorneys' fees were included in escrow but were mislabeled as insurance.

76.     As a direct and proximate result of the above-described conduct in violations of the FDCPA requirements, DELIA suffered damage including but not limited to loss of his ability to sell his home and use the proceeds of sale, pain and suffering, mental anguish, loss of capacity

for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation, embarrassment, despair, and substantial attorneys' fees.

### Prayer For Relief

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendants BRADLEY, NEWREZ and DITECH for:

A.    Actual damages;

B.    Statutory damages in the amount of $1,000.00;

C.    Reasonable costs and attorney fees; and

D.    Such other and further relief as justice may require and allow, including pre-judgment and post-judgment interest.

### COUNT V
### ACTION FOR OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT (F.S. §559.72, et sequi)
**(Solely as to Defendant DITECH)**

77.    DELIA repeats and re-alleges the allegations contained in paragraphs 1 - 34, above, as if fully set forth herein.

78.    DELIA has been "the object of collection activity arising from consumer debt".

79.    DELIA is a "Consumer" pursuant to the FCCPA in that he is a natural person and was allegedly obligated to pay an obligation arising out of a transaction where the money, property or insurance or services which were the subject of the transaction were primarily for personal, family, or household purposes, to wit: a mortgage loan on a personal residence.

80.    The debt at issue under the FCCPA was primarily for personal, family, or household purposes.  The FCCPA defines "debt" as "any obligation or alleged obligation of a

consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(1).

81.     DITECH has engaged in an act or omission prohibited by the or FCCPA.

82.     DITECH is a "debt collector" within the definition established by the FCCPA, Fla. Stat. § 559.55(6), in that it uses the U.S. Mails within this state in a business, the principal purpose of which is to regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Defendant DITECH services approximately 700,000 accounts totaling about $24,000,000,000.00 in assets.

83.     DITECH is a "consumer collection agency" within the definition established by the FCCPA, Fla. Stat. § 559.55(7) in that it is a business entity engaged in the business of soliciting consumer debts for collection and collecting consumer debts.

84.     DITECH regularly engages in the collection of consumer debts on behalf of many lenders as a mortgage loan servicer.

85.     DITECH is a "person" within the meaning of the FCCPA, and in particular as it is used in Fla. Stat. § 559.72.

86.     Section 559.72 of the Florida Statute ("FCCPA") provides:

>    In collecting consumer debts, no person shall:
>
>    [...]
>
>    (9)    Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

[...]

87.     DITECH violated the FCCPA because it knew it that the June 19, 2019 Notice of Default letter had double billed DELIA for escrow in the amount of $65,421.84, yet it chose not to correct that error.

88.     On June 1, 2017, Judge Gregory Presnell had warned DITECH that "Such an attempt by DITECH would certainly be a misrepresentation of the character, amount, or legal status of a debt." (See footnote 1, above.)  DITECH knew that it had mislabeled attorneys' fees as insurance and included those sums in escrow.  This is malicious behavior for which punitive damages must be awarded.

89.     As a direct and proximate result of the above-described conduct in violations of the FCCPA requirements, DELIA suffered damage including but not limited to loss of his ability to sell his home and use the proceeds of sale, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, constant fear of dispossession, frustration, aggravation, humiliation, embarrassment, despair, and substantial attorneys' fees.

### ***Prayer For Relief***

WHEREFORE, Plaintiff, DENNIS DELIA, an individual, demands judgment against Defendant DITECH for:

A.     Actual damages;

B.     Statutory damages in the amount of $1,000.00;

C.     Punitive damages.

D.     Attorney fees and costs

E.     Declaratory relief that the mislabeling of attorneys' fees is improper and illegal.

F.     Injunctive relief requiring DITECH to remove the attorneys' fees and double

billed escrow from DELIA's account.

## VI.
## DEMAND FOR TRIAL BY JURY

Plaintiff DELIA demands a trial by jury.

/s/ George M. Gingo
GEORGE M. GINGO
FBN 879533
/s/ James E. Orth, Jr.
James E. Orth, Jr.
FBN 75941
Counsel for Plaintiff
400 Orange Street
Titusville, FL 32796
Phone:  (321) 264-9624
gingo.george@gmail.com
jamesorthlaw@gmail.com